# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ERSTE ASSET MANAGEMENT GMBH, | § § § | |
| Plaintiff Below, Appellant, | § § § | No. 374, 2024 |
| | § § | Court Below: Court of Chancery |
| v. | § § | of the State of Delaware |
| | § | |
| BERNARDO HEES, ALEXANDRE BEHRING, JORGE PAULO LEMANN, MARCEL HERRMANN TELLES, PAULO BASILIO, DAVID KNOPF, EDUARDO PELLEISSONE, 3G CAPITAL, INC., 3G CAPITAL LTD., 3G GLOBAL FOOD HOLDINGS, L.P., 3G GLOBAL FOOD HOLDINGS GP LP, 3G CAPITAL PARTNERS II L.P., 3G CAPITAL PARTNERS LTD, HK3 18 LP, JOHN CAHILL, GEORGE ZOGHBI, RASHIDA LA LANDE, and JOAO M. CASTRO-NEVES, | § § § § § § § § § § § § § § § § § | C.A. No. 2023-1191 |
| Defendants Below, Appellees, | § § § | |
| -and- | § § | |
| THE KRAFT HEINZ COMPANY, a Delaware Corporation, | § § § | |
| Nominal Defendant, Appellee. | § § | |

Submitted: March 12, 2025
Decided: June 9, 2025

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Court of Chancery, **REVERSED and REMANDED.**

Joel Friedlander, Esquire, Jeffrey M. Gorris, Esquire, Christopher M. Foulds, Esquire, Matthew D. Venuti, Esquire, FRIEDLANDER & GORRIS P.A., Wilmington, Delaware, Lawrence P. Eagel, Esquire, Melissa Fortunato, Esquire, Brandon Walker, Esquire, BRAGAR EAGEL & SQUIRE, P.C., New York, New York, *Attorneys for Appellant/Plaintiff-Below, Erste Asset Management GmbH.*

Matthew D. Stachel, Esquire, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, Delaware, Daniel J. Kramer, Esquire, Andrew J. Ehrlich, Esquire, Robert N. Kravitz, Esquire, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, *Attorneys for Appellees/Defendants-Below, The Kraft Heinz Company, Bernardo Hees, Alexandre Behring, Jorge Paulo Lemann, Marcel Herrmann Telles, Paulo Basilio, David Knopf, Eduardo Pelleissone, John Cahill, George Zoghbi, Rashida La Lande, and Joao M. Castro-Neves.*

Michael A. Pittenger, Esquire, Jacqueline A. Rogers, Esquire, Camilia R. Katkocin, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, Sandra C. Goldstein, Esquire, Stefan Atkinson, Esquire, Kevin M. Neylan, Jr., Esquire, KIRKLAND & ELLIS LLP, New York, New York, *Attorneys for Appellees/Defendants-Below, 3G Capital, Inc., 3G Capital Partners Ltd., 3G Capital Partners II LP, 3G Global Food Holdings GP LP, 3G Global Food Holdings LP, and HK3 18 LP.*

**LEGROW**, Justice:

In early 2020, Erste Asset Management GmbH filed an action asserting derivative claims against Kraft Heinz Company's fiduciaries. Erste's claims arose from an August 2018 sale of Kraft Heinz's stock by 3G Capital, Inc., a significant Kraft Heinz minority stockholder. The Court of Chancery dismissed that complaint under Rule 23.1, concluding that the derivative plaintiffs failed to plead particularized facts creating a reasonable doubt that six of Kraft Heinz's eleven directors were disinterested or lacked independence. One of those six directors was John Cahill.

Cahill had previously served as a consultant to Kraft Heinz and received substantial compensation in that role. In his consultancy work, Cahill reported to Kraft Heinz's CEO and its board chair, both of whom were 3G partners, and Kraft Heinz's 3G-controlled compensation committee established Cahill's compensation. In August 2019, Kraft Heinz disclosed that Cahill's consultancy had ended on July 1, 2019—before the date for assessing demand futility. The representation that Cahill's consulting relationship had terminated was repeated several times in Kraft Heinz's public disclosures and in the briefs that the derivative defendants filed in the Court of Chancery. In concluding that the derivative plaintiffs' allegations did not impugn Cahill's ability to impartially consider a demand, the Court of Chancery expressly referred to the fact that his consulting agreement terminated before the

derivative action was filed and that there were no facts alleged indicating that Cahill expected the consulting arrangement to resume.

But Kraft Heinz now concedes that those disclosures, on which the derivative plaintiffs and the Court of Chancery relied, were false. It is undisputed that Cahill continued to serve as a consultant to Kraft Heinz after July 2019. The only thing that changed at that time was his compensation structure: in return for Cahill's continuing work, he received 500,000 options, with one-third of that award vesting on each anniversary of the initial grant. The fact of Cahill's ongoing consultancy— undisclosed in and contrary to Kraft Heinz's public disclosures—was not known to Erste until October 2023, more than a year after the derivative action was dismissed and closed.

Upon learning this new information, Erste filed a complaint seeking relief from the judgment in the prior action on the basis of fraud and newly discovered evidence under Rule 60(b). The Court of Chancery dismissed Erste's bid to reopen the prior action, holding that (i) fraud under Rule 60(b)(3) applies only in the rare circumstance that a party commits a fraud on the court; and (ii) the new information regarding Cahill's consultancy was not newly discovered evidence under the rule because Erste could have learned the information with reasonable diligence.

We reverse. The Court of Chancery erred in its conclusion that a party may obtain relief from final judgment on the basis of fraud only if there has been a "fraud

on the court." Although Rule 60(b)(3) applies only in rare circumstances, the rule's plain language and Delaware precedent establish that it extends beyond a fraud on the court and applies when fraud between the parties prevents the defrauded party from fairly and adequately presenting its case. Erste has pleaded such a claim, and the court therefore erred in dismissing the action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties

Erste Asset Management GmbH is a minority stockholder of the Kraft Heinz Company, a Delaware corporation and one of the largest global food and beverage companies.[1] Kraft Heinz was established as a standalone public company in 2015 after the merger of Kraft Food Groups, Inc. and H.J. Heinz Holding Corporation.

3G Capital, Inc. is a global investment firm and significant minority stockholder in Kraft Heinz. As of June 2019, three 3G principals—Jorge Paulo Lemann, Alexandre Behring, and Joao Castro-Neves—served on Kraft Heinz's board of directors (the "Board"). Another director, Alexandre Van Damme, was a longtime business partner of 3G. Board members John Cahill and George Zoghbi worked as consultants to Kraft Heinz.

---

[1] Unless otherwise noted, the facts are taken from *Erste Asset Mgmt. GmbH v. Hees*, 2024 WL 3722620 (Del. Ch. Aug. 8, 2024) [hereinafter the "Opinion"].

**B.      Cahill's Consultancy**

Before the Kraft Heinz merger, Cahill was Chairman and Chief Executive Officer of Kraft Food Groups, Inc.  In July 2015, he became a Kraft Heinz director and vice chairman of the Board.  Later that month, Cahill entered into a two-year consulting agreement with Kraft Heinz.  He was paid $4 million per year to consult with Kraft Heinz CEO Bernardo Hees and Chairman Behring, who were also 3G partners.[2]  After the initial consulting agreement expired, Kraft Heinz and Cahill entered into a new consulting agreement on November 1, 2017.  Cahill undertook fewer responsibilities, and his compensation was lowered to $500,000 per year. This payment was in addition to approximately $255,000 in compensation that Cahill received as a director.  Cahill's Kraft Heinz-related compensation constituted more than half his annual income.

In June 2019, Cahill emailed Chairman Behring and director Gregory Abel. He raised potential independence issues associated with the current consulting agreement and suggested a "change to [his] financial arrangement with Kraft Heinz."[3]  Cahill wrote:

> . . . I ask you to consider a change to my financial arrangement with Kraft Heinz.

---

[2] Hees was a 3G partner from July 2010 until June 2019. App. to Appellant's Opening Br. [hereinafter A__] at A254.

[3] Opinion at *2; A14.

4

The bulk of my financial tie[s] to the Company is in the form of options, and all my options are underwater. This is completely appropriate given our results and the losses shareholders have endured. At the same time, I am mindful that I am deemed to be a non-independent Director because of recurring annual consulting payments of $500,000. This is probably not hea[l]thy for the long term.

To address both issues, I recommend the Company suspend consulting payments to me (benefitting the ongoing P&L). In lieu, the Company would provide me a one-time grant of 500,000 options vesting ratably over three years. This would get me on the road to independent status.

If you think this is not sensible, no worries. Know that my commitment to working with the new team to turn around Kraft Heinz is solid . . . .[4]

In a June 20, 2019 meeting, the Kraft Heinz Compensation Committee reviewed Cahill's consulting arrangement. Minutes of the meeting reflect that the Compensation Committee "discussed proposed changes to Mr. Cahill's compensation arrangement."[5] The Committee reviewed a slide deck that stated:

- "Cahill . . . [c]urrently receives an annual gross compensation of USD $500k as an advisor."

- "We are proposing no cash compensation effective July 2019 and [a] one time grant of #500,000 stock options[]."

- "This creates a path for Cahill becoming an independent board member in three years."[6]

---

[4] Opinion at *2; A14.

[5] Opinion at *3; A18.

[6] Opinion at *3; A16.

5

The presentation noted that Cahill's "stock options [were] expected to be issued the later of the end of the blackout period or August 15 based on the closing price for [Kraft Heinz] stock on that date."[7] The Compensation Committee approved the proposed changes to Cahill's compensation arrangement.[8]

On August 2, 2019, Kraft Heinz filed a proxy statement (the "2019 Proxy") that referred to Cahill as "a former consultant to Kraft Heinz" and stated that "Mr. Cahill's advisory and consulting arrangement terminated on July 1, 2019."[9] In accordance with Item 402(k) of Regulation S-K, Kraft Heinz disclosed Cahill's compensation in the Director Compensation Table. The table listed Cahill's standard Board retainer fee of $110,000, deferred stock awards of $125,050, and payments of $500,000 for his consulting duties under the column "All Other Compensation."[10] A footnote to the Cahill-related disclosure explained:

> Mr. Cahill provided advisory and consulting services to Kraft Heinz related to then-current and historical finances, relationships with licensors, customers, and vendors, employee matters, product development, marketing and distribution, government affairs, and strategic opportunities. Such services were provided pursuant to a consulting agreement entered into between Mr. Cahill and the Company in November 2017. ***Mr. Cahill's advisory and consulting arrangement terminated on July 1, 2019.*** Previously, these services were provided pursuant to an arrangement entered into following the

---

[7] Opinion at *3; A16.

[8] Opinion at *3; A18.

[9] Opinion at *; Kraft Heinz Company, Proxy Statement (Form 14a) (Aug. 2, 2019) [hereinafter the "2019 Proxy"]; A19–36 (2019 Proxy).

[10] 2019 Proxy at A35.

6

2015 Merger. Mr. Cahill's services under the consulting agreement were distinct and separate from his duties as a director. Payments to Mr. Cahill under the consulting agreement are disclosed in the "All Other Compensation" column. For a discussion of the advisory and consulting services provided by Mr. Cahill to Kraft Heinz, please see "Corporate Governance and Board Matters — Independence and Related Person Transactions — Consulting Agreement."[11]

The section titled "Consultant Agreement" disclosed:

> On November 2, 2017, we entered into a consulting agreement with Mr. Cahill pursuant to which he provided advisory and consulting services to us related to then-current and historical finances, relationships with licensors, customers and vendors, employee matters, product development, marketing and distribution, government affairs and strategic opportunities. ***Mr. Cahill's advisory and consulting arrangement terminated on July 1, 2019.*** Payments to Mr. Cahill under the consulting agreement are disclosed in the "All Other Compensation" column of 2018 Non-Employee Director Compensation Table below. Previously, Mr. Cahill had provided similar services under a consulting agreement entered into following the 2015 Merger, which had expired in July 2017.[12]

On August 16, 2019, Cahill received the stock options approved by the Compensation Committee in a Non-Qualified Stock Option Award Agreement under the Kraft Heinz Company Omnibus Incentive Plan.[13] Cahill was awarded 500,000 shares at $25.41 per share, vesting over a three-year period.[14] The options

---

[11] 2019 Proxy at A35 n.4 (emphasis added).

[12] *Id.* at A26 (emphasis added); Opinion at *3.

[13] Exhibit D to the Transmittal Affidavit of Joel Friedlander, Esquire, in Support of Plaintiff Erste Asset Management GmbH's Answering Brief in Opposition to Defendants' Motions to Dismiss the Verified Stockholder Complaint at 5, *Erste Asset Management GmbH v. Bernardo Hees, et al.*, No. 2023-1191 (Del. Ch. Aug. 8, 2023) (Ch. Dkt. 17).

[14] *Id*. at 5.

7

"vest and become exercisable . . . subject to [Cahill's] continued Service (including, for the avoidance of doubt, service as a board of director member, consultant or advisor) with the Company or one of its Subsidiaries or Affiliates."[15]  Kraft Heinz disclosed the grant in a Form 4 filing four days later, stating that the stock options "cliff-vest on August 16, 2022, subject to the terms and conditions of the stock option award agreement."[16]

The Form 4 did not provide any further information about the options' connection with Cahill's ongoing consultancy.[17]  To the contrary, Kraft Heinz continued to publicly represent that the consultancy had ended.[18]  On March 27, 2020, Kraft Heinz filed its 2020 proxy statement with the SEC (the "2020 Proxy).[19] The 2020 Proxy disclosed that Cahill received $250,000 in 2019 under a 2017 "advisory and consulting arrangement terminated on July 1, 2019."[20]  His consulting services were described as being "distinct and separate from his duties as a

---

[15] *Id.* at 6.

[16] Opinion at *4; Kraft Heinz Company, Statement of Changes in Beneficial Ownership of Securities (Form 4) (Aug. 20, 2019) [hereinafter "Form 4"]; A37–38.

[17] *See* Form 4; A37–38.

[18] *See* Kraft Heinz Company, Proxy Statement (Form 14a) (March 27, 2020) [hereinafter the "2020 Proxy"]; A53–87; Kraft Heinz Company, Proxy Statement (Form 14a) (March 24, 2023) at A33.

[19] Opinion at *4; 2020 Proxy.

[20] Opinion at *4; 2020 Proxy at A58, A65, A73, A84.

8

director."[21] It also stated that he received a "one-time grant of 500,000 stock options" "[i]n connection with the termination of his consulting agreement."[22]

Kraft Heinz's proxy statements for 2021–2023 continued to incorrectly describe Cahill as a "former consultant."[23] The 2023 proxy statement stated that Cahill "last provided consulting services to Kraft Heinz in June 2019," "received a grant of stock options in 2019 in connection with the termination of his consulting agreement," and was "determined to be independent effective August 17, 2022."[24]

Kraft Heinz now concedes for purposes of this appeal that its public statements that Cahill was a former consultant were false.[25]

## C. The Prior Action

On December 2, 2019, Erste served a books and record demand under 8 *Del. C.* § 220 on Kraft Heinz "[t]o investigate potential wrongdoing, mismanagement, and breaches of fiduciary duties by the Company's management and its Board of

---

[21] Opinion at *4; 2020 Proxy at A64, A85.

[22] Opinion at *4; 2020 Proxy at A58, A73.

[23] Kraft Heinz Company, Proxy Statement (Form 14a) (March 26, 2021); Kraft Heinz Company, Proxy Statement (Form 14a) (March 25, 2022); Kraft Heinz Company, Proxy Statement (Form 14a) (March 24, 2023) [hereinafter the "2023 Proxy"].

[24] Opinion at *4; 2023 Proxy at A333.

[25] Oral Argument at 28:26 (Mar. 12, 2025) (accessible at https://courts.delaware.gov/supreme/oralarguments/) (Supr. Dkt. 29) [hereinafter "Appellate Oral Argument"] (The Court: "The defendants' brief seems to avoid addressing whether the company's disclosures were in fact false [and] misleading . . . are the defendants conceding for the purpose of this argument that they were false and misleading?" Kraft Heinz: "We will concede for the purpose of this argument that the statement was untrue").

9

Directors."[26] It sought, among other things, "[d]ocuments reflecting any and all personal, familial, financial, or business relationships, other than their service as directors of Kraft Heinz, between or among any members of the Board."[27] Kraft Heinz produced documents in response.[28]

After receiving the books and records produced by Kraft Heinz, Erste filed a derivative complaint in the Court of Chancery on January 21, 2020. The complaint alleged breach of fiduciary duty claims concerning an August 2018 sale of part of 3G's Kraft Heinz stock, which took place six months before Kraft Heinz's disclosure of disappointing financial results and impairment charges that resulted in a significant drop in its stock price.[29]

Various derivative actions filed by Kraft Heinz stockholders between July 30, 2019 and early 2020 were consolidated (the "Prior Action"), and Erste was appointed co-lead plaintiff.[30] A consolidated amended complaint was filed in the Prior Action on April 27, 2020 (the "Amended Complaint"). The derivative plaintiffs alleged that demand on the board was excused as futile because a majority

---

[26] Opinion at *5; App. to Appellee's Answering Br. [hereinafter B__] B20 (books and records demand).

[27] Opinion at *5; B20 (books and records demand).

[28] Opinion at *5.

[29] *See* B55–62.

[30] *In re Kraft Heinz Co. Derivative Litig.*, 2021 WL 6012632 at *3 (Del. Ch. Dec. 15, 2021), *aff'd*, 282 A.3d 1054 (Del. 2022) (TABLE); A39–52.

10

of the directors were interested or lacked independence. The relevant date for demand-futility purposes was July 30, 2019. The Amended Complaint alleged that Cahill served as a consultant of Kraft Heinz "until July 1, 2019."[31] That allegation was based on Kraft Heinz's representations in the 2019 and 2020 Proxies.[32] Kraft Heinz conceded at oral argument in this appeal that the proxy statements were incorporated by reference into the amended complaint.[33]

In June 2020, Kraft Heinz moved to dismiss the Amended Complaint for failure to plead demand futility under Court of Chancery Rule 23.1 and for failure to state a claim under Rule 12(b)(6). During briefing and oral argument on their motion to dismiss, Kraft Heinz repeated previous statements that Cahill no longer was a consultant as of the date for assessing demand futility.[34]

On December 15, 2021, the Court of Chancery dismissed the Prior Action with prejudice under Rule 23.1.[35] The court held that the plaintiffs had failed to plead particularized facts creating a reasonable doubt that a majority of Kraft Heinz's

---

[31] A332; A336 (Verified Complaint for Relief from Judgment).

[32] *Id.*

[33] Appellate Oral Argument at 30:20.

[34] A336–37 at ¶¶ 267, 269–70 (Verified Complaint for Relief from Judgment); *see* Reply Br. in Prior Action at 8–9 ("Defendants demonstrated that the Complaint lacks particularized allegations suggesting that Mr. Cahill's *prior* consulting arrangement with Kraft Heinz and receipt of ordinary director compensation plead a lack of independence.") (emphasis in original).

[35] *In re Kraft Heinz Co. Derivative Litig.*, 2021 WL 6012632 at *13 (Del. Ch. Dec. 15, 2021), *aff'd*, 282 A.3d 1054 (Del. 2022) (TABLE).

11

Board was disinterested or lacked independence from 3G or its defendant partners as of July 30, 2019.

In its opinion dismissing the Amended Complaint in the Prior Action, the court reasoned that six of Kraft Heinz's eleven directors were independent: Jeanne Jackson, John Pope, Feroz Dewan, Tracy Britt Cool, Abel, and Cahill. The court held that "plaintiff's allegations about Cahill . . . do not, in totality, impugn [his] independence from 3G."[36]

In reaching that conclusion, the Court of Chancery relied on the Amended Complaint's allegation that Cahill's consulting agreement had ended before the first derivative complaint was filed. That allegation was based on Kraft Heinz's public disclosures. The court stated:

> Cahill's consulting agreement with Kraft Heinz terminated on July 1, 2019—before this action was filed. There are no facts alleged indicating that Cahill expected his consulting arrangement to resume.[37]

Because those six directors constituted a majority of the Board, the court declined to address whether the other directors, including Zoghbi or Van Damme, were disinterested and independent of 3G.

The derivative plaintiffs appealed to this Court, still unaware that Cahill's consultancy had not ended. On appeal, the derivative plaintiffs referred to the 2019

---

[36] *Id.*

[37] Opinion at *5 (citing and quoting *In re Kraft Heinz*, 2021 WL 6012632, at *11).

12

stock option award to Cahill, but—believing the consultancy had ended—argued that the changes to Cahill's compensation arrangement were made tactically to defend against possible future derivative litigation. Based on public disclosures (including the August 2019 Form 4 filings), the plaintiffs asserted that the stock grants "were disclosed in August 2019 . . . suggesting that the economic arrangements for [Cahill] were being restructured in anticipation of the filing of derivative actions."[38] Erste hypothesized that the options disclosed in the Form 4 were a surreptitious way to pay Cahill differently without requiring further work:

> [Kraft Heinz's] 2020 proxy statement describes the grant of stock options to Cahill '[i]n connection with the termination of his consulting agreement'[ ], but the Form 4 respecting the options was filed on August 20, 2019, and states that the 'transaction date' was August 16, 2019—after the termination of the consulting agreement and after the filing of the first derivative complaint . . . In other words, KHC sought to challenge demand futility based on Cahill's status as former consultant, when in reality they were conniving to pay him differently without requiring any further consulting work.
>
> . . . If Cahill cannot act objectively respecting KHC, there is no reason to believe he can act objectively as to 3G, which wields managerial authority at KHC.[39]

On appeal, Kraft Heinz again argued that Cahill was independent because his consultancy had ended. The Company described his consultancy with the following terminology: "former consultant"; "prior consulting arrangement"; "former

---

[38] B159 (Reply Br. in Appeal of the Prior Action).

[39] B171–72 (Reply Br. in Appeal of the Prior Action).

13

consulting arrangement"; "prior consulting"; "waning prior consulting relationship"; "former status as a consultant."[40] The defendants distinguished Cahill's consultancy from cases that involve "indefinite or lengthy consulting arrangements [that] courts have found indicative of bias-producing relationships."[41] At oral argument on appeal, the defendants argued that Cahill was "free of the consulting relationship" as of the date for assessing demand futility.[42]

On August 1, 2022, this Court affirmed the Court of Chancery's decision on the basis of its December 15, 2021 opinion. The Amended Complaint was dismissed with prejudice and the Prior Action was closed.

## D. The Demand and the Board's Response

On November 29, 2022, Erste served a litigation demand on the Kraft Heinz Board. The demand raised the same claims alleged in the Prior Action. The demand also raised a new claim: certain defendants were liable to the Company for waste. This waste claim was based on Erste's contention that the 3G-affiliated defendants caused Kraft Heinz to "gift" Cahill "500,000 options after his consulting agreement was terminated."[43]

---

[40] A337 ¶ 271; A130; A152–53; A157–58.

[41] A157.

[42] A338 ¶ 272 (internal quotation marks omitted) (citation omitted).

[43] Opinion at *6.

The Board assembled a "Working Group" of two independent directors who investigated and eventually rejected the demand.[44] During the investigation, the Working Group interviewed Cahill about the purpose of the stock options granted to him in 2019. The Working Group concluded that the options were to compensate Cahill for "ongoing work for the Company that exceeded the role and scope of his service as a director."[45] On May 20, 2023, the Working Group issued its report and recommended that the Board reject the demands.[46] The Board accepted that recommendation and decided not to pursue further litigation on the matter. Erste was made aware of the decision by a letter to his counsel dated May 30, 2023.[47]

On August 21, 2023, Erste served a new books and records demand to investigate the Board's rejection, theorizing that the stock options awarded to Cahill were a wasteful transaction since his consultancy had purportedly ended before the options were granted. Kraft Heinz produced documents on October 11, 2023, including (i) Cahill's email to Behring and Abel on June 1, 2019; (ii) the minutes and presentation from the June 20, 2019 Compensation Committee meeting; and (iii)

---

[44] Answering Br. at 17; A339.

[45] Opinion at *6; Supplemental Report of the Working Group of the Board of Directors of The Kraft Heinz Company, dated May 20, 2023, *Erste Asset Management GmbH v. Bernardo Hees, et al.*, at 34 (Aug. 8, 2024) (Exhibit 1 to the Stachel Affidavit) [hereinafter the "Working Group Report"].

[46] A339.

[47] B191–92.

the May 20, 2023 Working Group Report.[48]  For the first time, Erste became aware that Cahill's consultancy had not ended on July 1, 2019, as Kraft Heinz had represented in its proxy statements and in the Prior Action.

## E.    The New Action

Other plaintiffs filed wrongful refusal actions in the Court of Chancery,[49] but Erste took another tack.  On October 30, 2023, Erste attempted to file a motion in the Prior Action seeking relief from the judgment under Court of Chancery Rule 60(b).  Since the Prior Action had been closed for more than a year, however, the motion was time barred.  Erste then filed a new action to set aside the judgment in the Prior Action under Rule 60(b).

Erste advanced five claims in this new action.  Count I sought relief under Rule 60(b).[50]  Count II claimed that certain director defendants breached their fiduciary duties by allegedly making false disclosures in Kraft Heinz's proxy statements.[51]  Counts III, IV, and V mirrored Erste's claims in the Amended Complaint in the Prior Action, alleging *Brophy* and aiding-and-abetting claims based

---

[48] *See* Opinion at *6; A14–18.

[49] *See In re Kraft Heinz Demand Refused Deriv. S'holder Litig.*, 2024 WL 3493957 (Del. Ch. July 19, 2024) (dismissing the demand-refused suits).

[50] *See* A342–43 (Count I (Relief from Judgment)).

[51] *See* A343–44 (Count II (False Disclosures)).

on 3G's August 2018 stock sale.[52] The parties agreed to brief Counts I and II first, as a dismissal of those claims would be dispositive of the others.

Count I sought relief under two subsections of Rule 60(b). First, Erste argued that it was entitled to relief under Rule 60(b)(2) for newly discovered evidence. According to Erste, Cahill and another Kraft Heinz director, Zoghbi, had received stock options for undisclosed and ongoing consulting services. Second, Erste asserted that Kraft Heinz's public filings improperly disclosed Cahill's consultancy status and compensation, which constituted fraud under Rule 60(b)(3).

In Count II Erste claimed that the director defendants breached their fiduciary duties by failing to correct the false compensation-related disclosures in Kraft Heinz's proxy statements. Erste alleged that it was harmed because it incurred litigation costs in the Prior Action.[53]

The director defendants, 3G entities, and Kraft Heinz moved to dismiss the complaint on March 4, 2024. After briefing and oral argument, the Court of Chancery dismissed Count I. The court held that the information regarding Cahill's ongoing consultancy was not "newly discovered evidence" because "reasonable diligence on Erste's part—either through its books and records demand or a thorough review of Kraft Heinz's public filings—would have uncovered this information

---

[52] *See* A344–45 (Count III (*Brophy*)); A345-49 (Count IV (Contribution and Indemnification)); A349–50 (Count V (Aiding and Abetting)); *See also* Opinion at *7 n.80–82.

[53] *See* A343 (Count II (False Disclosures)).

17

during the prior lawsuit."[54]  The court reasoned that Erste "raised the director's options in its appeal of the Prior Action to the Supreme Court."[55]  Based on its conclusion that Erste could have obtained the information about Cahill and Zoghbi before the Prior Action was dismissed, the court rejected Erste's claim under Rule 60(b)(2).

The court then considered whether the Prior Action was a product of fraud on the court under Rule 60(b)(3).  It found that the alleged fraud fell outside the judicial process, "fall[ing] well short of what Rule 60(b)(3) requires."  The court held that Rule 60(b)(3) is "confined to the more serious, but fortunately rare, cases involving a corruption of the judicial process itself."[56]  The court reasoned that "[t]o justify relief under Rule 60(b)(3), the 'fraud must be extrinsic'" and "'directly affect[]' the 'integrity of the court and its ability to function impartially.'"[57]  The court concluded that "if this were fraud, it is 'intrinsic,'" explaining that any misrepresentation in the disclosures was "outside the judicial process," and the alleged fraud therefore was not covered by Rule 60(b)(3).[58]  Having so concluded, the court dismissed Count I,

---

[54] Opinion at *9.

[55] *Id.* at *1.

[56] *Id.* at *10.

[57] *Id.* (quoting *Smith v. Williams*, 2007 WL 2193748, at *4-5 (Del. Super. July 27, 2007)).

[58] *Id.* at *10.

stating "Erste makes no well-pleaded allegation supporting a reasonable inference that counsel gave false information to this court."[59]

The court also dismissed Count II, holding that it "cannot reasonably infer that the director defendants 'knew' false statements were being used to 'create a false [litigation] record.'"[60] It also rejected Erste's damages claim, calling it a "creative attempt to recover attorneys' fees [that] falls short of pleading the elements of Erste's claim."[61]

Because dismissal of the first two claims was dispositive of the others, the court did not reach Counts III–IV. The Court of Chancery concluded that Erste was not entitled to the relief it sought, stating that "the sort of rare circumstances that might merit revisiting" the Prior Action were absent in this case.[62]

Erste now appeals the Court of Chancery's ruling on its Rule 60(b) arguments in Count I and the dismissal of Count II under Rule 12(b)(6).[63]

---

[59] *Id.*

[60] *Id.* at *12.

[61] *Id.* at *1.

[62] *Id.*

[63] *Id.* at *1, *8, *12.

## II.  STANDARD OF REVIEW

This court reviews a trial court's decision to grant or deny a Rule 60(b) motion on an abuse of discretion standard.[64]  "An abuse of discretion occurs when 'a court has . . . exceeded the bounds of reason in view of the circumstances, [or] . . . so ignored recognized rules of law or practice so as to produce injustice.'"[65]  Whether the court employed the correct legal standard in resolving a Rule 60(b) application is a matter of law that we review *de novo*.[66]  The dismissal of a claim under Rule 12(b)(6) for failure to state a claim also is subject to *de novo* review.[67]

## III.  ANALYSIS

On appeal Erste argues that the court erred by (i) applying the incorrect legal standard to the application for relief under Rule 60(b)(3); (ii) holding that "reasonable diligence" for the purposes of Rule 60(b)(2) requires a books and

---

[64] *MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625, 633 (Del. 2001) ("A motion to reopen a judgment under Court of Chancery Rule 60(b) is addressed to the sound discretion of the trial court.  This Court's review of the grant or denial of such a motion is for an abuse of discretion.") (citing *Battaglia v. Wilmington Sav. Fund Soc.*, 379 A.2d 1132, 1135 (Del. 1977)); *see also Wife B. v. Husband B.*, 395 A.2d 358 (Del. 1978)).

[65] *MCA*, 785 A.2d at 634 (quoting *Lilly v. State,* 649 A.2d 1055, 1059 (Del. 1994)).

[66] *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 639 (Del. 2014); *MCA*, 785 A.2d at 638 (reiterating that whether a trial court employed an incorrect legal standard in denying a Rule 60(b) application is reviewed *de novo*).

[67] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 167–68 (Del. 2006) (the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim for relief is reviewed *de novo*); *Franklin* v. *Glenhill Advisors LLC*, 2023 WL 569192, at *5 (Del. Ch. Jan. 27, 2023), *aff'd*, 304 A.3d 950 (Del. 2023) (TABLE) (acknowledging that a Rule 12(b)(6) motion addressed to an independent action under Rule 60 requires the court's evaluation of standards and policies of Rule 60 to determine whether the Complaint has stated a claim for relief).

records demand to confirm the accuracy of a proxy statement; and (iii) concluding that Count II failed to plead the necessary elements of a disclosure claim. Erste does not challenge the Court of Chancery's dismissal of the claims concerning Zoghbi in Count I.[68] Because we find the 60(b)(3) issue dispositive, we do not reach the Rule 60(b)(2) issue and make no conclusions regarding the correctness of the court's dismissal of that aspect of the claim. We also remand Count II for further consideration and briefing in light of our decision as to Count I.

## A. The Court of Chancery applied the incorrect legal standard under Rule 60(b)(3).[69]

The Court of Chancery's dismissal of Erste's claim based on Rule 60(b)(3) was founded on the court's legal conclusion that Rule 60(b)(3)'s application is limited to instances of "fraud on the court." Erste argues that this conclusion was in error. In Count I, Erste claimed that Kraft Heinz's misrepresentations regarding Cahill's consultancy amounted to both a fraud on the court and broader "intrinsic" fraud that misled Erste about Cahill's independence and prevented Erste from

---

[68] *See generally* Opening Br. at 18–37; Reply Br. at 5–16; *see also Murphy* v. *State*, 632 A.2d 1150, 1152 (Del. 1993) ("The failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim on appeal.") (footnote omitted).

[69] The parties did not argue, and the Court of Chancery did not decide, whether Rule 60(b)(3) establishes the correct standard for an independent action seeking relief from a final judgment on the basis of fraud. We therefore express no view on that issue and instead analyze Erste's claim under Rule 60(b)(3), as the parties and the court did. *See* Charles Alan Wright et al., *Federal Practice and Procedure* at § 2868 (1995) [hereinafter *Wright & Miller*] (Independent Action for Relief) (noting that there may be different elements for fraud as an independent action seeking relief from judgment as opposed to a motion filed in a previous action to reopen a judgment under Rule 60(b)(3)).

21

establishing demand futility in the Prior Action.[70] In rejecting Erste's claim for relief grounded in Rule 60(b)(3), the Court of Chancery held that the rule is "narrow" and "confined to the more serious, but fortunately rare, cases involving a corruption of the judicial process itself."[71] The court held that the fraud "must be extrinsic" to satisfy Rule 60(b)(3), and that since any misrepresentation in the proxies was at most "intrinsic," Erste failed to make "well-pleaded allegation[s] supporting a reasonable inference that counsel gave false information to this court."[72]

On appeal, Erste has abandoned its fraud-on-the-court claim but argues that the court contradicted the plain language of the rule and applicable case law by failing to consider Count I under the broader definition of "fraud" within Rule 60(b)(3).[73] Erste contends that fraud "between parties" is an appropriate ground for relief from judgment under Rule 60(b)(3) under certain circumstances, and Kraft Heinz's failure to accurately disclose Cahill's consulting arrangement in the 2019 and 2020 Proxies are circumstances warranting relief under this standard.[74]

---

[70] A342–43 (Verified Stockholder Complaint).

[71] Opinion at *10.

[72] *Id.*

[73] Opening Br. at 19 (arguing that "the Court of Chancery erred by applying the case law interpreting 'fraud on the court' without regard for the case law interpreting Rule 60(b)(3). The Court of Chancery also erred by classifying Erste's claim as "intrinsic" fraud and denying it on that basis, in contradiction with the plain language of Rule 60(b)(3).").

[74] *See* Opening Br. at 24–25 ("[T]he Court of Chancery did not analyze whether Erste satisfied the Rule 60(b)(3) standard for fraud between the parties (*i.e.*, that Kraft Heinz's fraud prevented Erste from fairly and adequately presenting its case respecting Cahill's lack of independence).").

Kraft Heinz responds that the Court of Chancery correctly dismissed Erste's claim.[75] Kraft Heinz argues that despite Erste's argument that the Vice Chancellor "'improperly collapsed' the tests for fraud under Rule 60(3) and for fraud upon the court," the standard for "both tests required Plaintiff to allege fraud, amounting to unfair litigation tactics, during the course of the Prior Action."[76] Kraft Heinz does not expressly argue that Rule 60(b)(3) is confined to fraud on the court, instead positing that "the Vice Chancellor's analysis was not confined to the historical, narrow distinction of intrinsic and extrinsic fraud."[77] Kraft Heinz contends that Erste "could not plead relief under Rule 60(b)(3) because [Erste] only challenged extra-litigation disclosures in proxy statements made before [Erste] filed the amended complaint in the Prior Action."[78]

Notwithstanding Kraft Heinz's efforts to elide what occurred in the Prior Action and ignore the basis for the Court of Chancery's holding in this case, Rule 60(b)(3) plainly offers Erste relief under these circumstances. That is not to say that Rule 60(b)(3) applies broadly; the rule's application remains cabined to instances of fraud that impair a party's ability to present its case in litigation. The Court of Chancery was correct in stating that Rule 60(b)(3) applies only in rare

---

[75] Answering Br. at 21–27.

[76] *Id*. at 24.

[77] *Id.* at 27.

[78] *Id.*

23

circumstances. But, as explained below, the court erred in limiting those circumstances to instances of fraud on the court.

### 1. The scope of Rule 60(b)(3) relief

Rule 60(b) requires a court to balance two significant, but competing, values: "[t]he first is ensuring the integrity of the judicial process and the second, countervailing, consideration is the finality of judgments."[79] Given the substantial interest in preserving the finality of judgments, Rule 60(b) motions are not taken lightly or granted easily.[80] A court confronting a request for relief under the rule must strike a balance between the need to bring litigation to a conclusive end and the "countervailing concern that justice is carried out."[81] "A Rule 60(b) motion is not an opportunity for a do-over or an appeal."[82]

Rule 60(b)(3) permits a court to relieve a party from a final judgment in the event of intrinsic or extrinsic fraud, misrepresentation or other misconduct of an adverse party. The Rule provides:

> On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons . . . (3) fraud (whether heretofore

---

[79] *MCA*, 785 A.2d at 634–35 (citations omitted) (citing *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.,* 1996 WL 757274, at *1 (Del. Ch. Dec. 20, 1996)); *see also Wright & Miller* § 2857 (Discretion of the Court).

[80] *MCA*, 785 A.2d at 634–35.

[81] *Id.* at 635.

[82] *Carlyle Inv. Mgmt. LLC. v. Nat'l Indus. Grp. (Hldg.),* 2012 WL 4847089, at *5 (Del. Ch. Oct. 11, 2012), *aff'd*, 67 A.3d 373 (Del. 2013).

24

denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party . . . .[83]

Delaware courts interpret unambiguous language according to its plain text to give effect to the drafters' intent.[84] By its plain terms, Rule 60(b)(3) covers both intrinsic and extrinsic fraud and obviates the muddied distinction between the two concepts.[85] In explaining the federal counterpart to Rule 60, commentators have clarified that "[t]he old law had permitted relief for 'extrinsic' fraud, fraud collateral to the matter or question that was tried and determined by the judgment in question, but had denied relief for 'intrinsic' fraud, fraud relating to the subject matter of the action."[86] Like its federal analog, Rule 60(b)(3) now applies more broadly; the rule's plain language includes fraud arising from a "misrepresentation . . . of an adverse party . . ." and expressly captures intrinsic and extrinsic fraud.

Our precedent has recognized Rule 60(b)(3)'s broader scope. In *MCA, Inc. v. Matsushita Elec. Indus. Co.*,[87] this Court observed that "[a] Rule 60(b)(3) motion is

---

[83] Del. Ch. Ct. R. 60(b)(3).

[84] *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016, 1040 (Del. Ch. 2020) (quoting *Rubick v. Sec. Instrument Corp.*, 766 A.2d 15, 18 (Del. 2000)).

[85] *See Wright & Miller* § 2870.

[86] *Wright & Miller* § 2861 ("Distinction Between Intrinsic and Extrinsic Fraud"); *see also Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007) ("Where, as here, the Superior Court's Rules of Civil Procedure closely track the Federal Rules of Civil Procedure, cases interpreting the federal rules are persuasive authority for our construction purposes."); *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 (Del. 1988) ("Decisions interpreting the Federal Rules of Civil Procedure are usually of great persuasive weight in the construction of parallel Delaware rules.").

[87] 785 A.2d 625, 639 (Del. 2001).

reserved for situations where a party has engaged in fraud or misrepresentation that prevents the moving party from fairly and adequately presenting his or her case."[88] Further, *MCA* recognized that Rule 60(b)(3) is "generally employed in situations where fraud or misrepresentation between the parties has occurred."[89]

Similarly, in *Franklin v. Glenhill Advisors LLC*,[90] the Court of Chancery distinguished the narrow "fraud on the court" standard from Rule 60(b)(3) fraud, stating that: "[a] Rule 60(b)(3) motion is reserved for situations where a party has engaged in fraud or misrepresentation that prevents the moving party from fairly and adequately presenting his or her case."[91] "Fraud on the court, by contrast, is a different, more serious, species, generally limited to fraudulent conduct that seriously affects the integrity of the normal process of adjudication."[92]

In *Smith v. Williams*, the Superior Court likewise distinguished fraud on the court from fraud between the parties, stating:

> Even though Defendants have identified a number of inconsistencies, some of which appear material to the issues in this case, and even

---

[88] *MCA*, 785 A.2d at 639 (citing *Wright & Miller* § 2860).

[89] *Id.* at 639 n.15; *see also Wright & Miller*, § 2870. In *MCA*, the plaintiffs' claim was "more properly characterized as a motion pursuant to Rule 60(b) . . . because there was a fraud upon the court, rather than a motion under Rule 60(b)(3)." *MCA*, 785 A.2d at 639. Because the plaintiffs only advanced a fraud on the court claim in *MCA*, the stricter fraud on the court standard was appropriate, and this Court held that the trial court "applied the appropriate standard in ruling on the [] plaintiffs' motion." *Id.*

[90] 2023 WL 569192, at *5 (Del. Ch. Jan. 27, 2023), *aff'd*, 304 A.3d 950 (Del. 2023).

[91] *Id.*

[92] *Id.* (internal quotes omitted) (citing *Johnson v. Preferred Pro. Ins. Co.*, 91 A.3d 994, 1005 (Del. Super. 2014)).

though the possibility of perjury or false testimony potentially overlaps into other litigation filed by Smith in this Court, I am still not persuaded that such conduct is so manifestly unconscionable as to constitute *fraud on the Court as distinguished from fraud between the parties*.[93]

## 2. The rule's application to Erste's claim for relief

In denying Erste's claim, the Court of Chancery erred in limiting its analysis to whether Erste met the "fraud on the court" standard instead of considering the broader scope of Rule 60(b)(3) fraud recognized in our precedent and in persuasive federal authorities. The cases cited by the Court of Chancery discuss the burden of proving fraud on the court but do not limit the rule to only those cases that meet that standard.[94] Erste's fraud claim was based on the proxy disclosures that "ma[de] it appear that [Cahill] [was] independent, so that a derivative action against 3G [was] dismissed for failure to plead demand futility."[95]

---

[93] *Smith*, 2007 WL 2193748, at *5 (emphasis added).

[94] *See, e.g., Chang v. Child's Advoc. Ctr. of Del., Inc.*, 2016 WL 3636539, at *1 (Del. Ch. June 29, 2016) (citing the discussion of "fraud on the court" in *MCA*, that "[a] party seeking to vacate an order on the ground that his or her opponent effectuated a *fraud on the court* bears a heavy burden," and stating that "[s]inister suspicions and dark imaginings of duplicitous conduct are not enough" to establish *fraud on the court*) (emphasis added); *Postorivo v. AG Paintball Hldgs, Inc.*, 2008 WL 3876199, at *21 (Del. Ch. Aug. 20, 2008) (discussing the difference between extrinsic and intrinsic fraud as described in *Smith* for purposes of its fraud on the court analysis. The case only analyzes fraud on the court and does not cite Rule 60(b). It considers whether a court may dismiss a case based on the conduct of counsel or the parties if such misconduct amounts to fraud on the court.); *Paron Cap. Mgmt., LLC v. Crombie*, 2012 WL 214777 (Del. Ch. Jan. 24, 2012) ("This Court has held that 'only extrinsic fraud will justify dismissal to remedy a *fraud on the court*, and only where established by clear and convincing evidence.'") (emphasis added) (citation omitted).

[95] A471 (Plaintiff Erste Answering Brief in Opposition to Defendants' Motion to Dismiss the Verified Stockholder Complaint).

27

The Court of Chancery was correct in concluding that not any fraudulent statement or representation will warrant relief under Rule 60(b)(3). The rule remains difficult to satisfy and establishes an exacting standard: (1) the burden of proving fraud is on the moving party; (2) the fraud must be established by clear and convincing evidence; and (3) the fraud must have prevented the moving party from fairly and adequately pleading its case.[96] The appropriate question now is whether the false disclosures that Kraft Heinz used to conceal Cahill's ongoing consultancy met this standard.

Kraft Heinz concedes for purposes of these proceedings that it made a false public disclosure regarding Cahill's ongoing consultancy and that the derivative plaintiffs incorporated those public disclosures in their Amended Complaint.[97] Those concessions and the undisputed facts satisfy the first two elements of the Rule 60(b)(3) standard. Those false disclosures caused Erste to incorrectly believe and allege in the Prior Action that Cahill's consultancy had ended before the date for assessing demand futility. The mistaken impression that Cahill had no ongoing consulting position with Kraft Heinz contributed to the Court of Chancery's conclusion that Cahill—and thereby a majority of the Kraft Heinz Board—was

---

[96] *Wright & Miller* § 2860; *see, e.g.*, *Floorgraphics Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 434 F. App'x 109, 111 (3d Cir. 2011) (discussing the federal Rule 60(b)(3) standard).

[97] Appellate Oral Argument at 28:46.

disinterested and independent. The Court of Chancery therefore dismissed the Amended Complaint in the Prior Action under Rule 23.1.

Kraft Heinz challenges the third element of this standard, urging us to affirm the Court of Chancery's reasoning that Erste "merely challenge[d] statements made in SEC filings—outside the judicial process" and thereby outside the scope of Rule 60(b)(3).[98] Kraft Heinz argues that the false statements in the proxies were "extra-litigation disclosures" made outside of the litigation and "before Plaintiff filed the amended complaint in the Prior Action."[99] Kraft Heinz relies on the Court of Chancery's reasoning that to the extent those false statements were "arguably linked to the judicial process," they were limited to "defense counsel's statements in the Prior Action" that were "addressing allegations in the Prior Action Complaint about Cahill's consultancy."[100]

Kraft Heinz's argument contravenes the record and is circular. First, the false statements in the proxy statements were incorporated by reference in the amended complaint and were repeated by defense counsel during argument in the Prior Action. The incorporation and reliance on those statements in the litigation brought them squarely within the judicial process. Second, Kraft Heinz cannot avoid the

---

[98] Answering Br. at 23.

[99] *Id.* at 27.

[100] *Id.* at 23; Opinion at *10.

misleading nature of the misrepresentations it made in litigation by arguing that it was parroting the Amended Complaint when the allegations in the complaint were wrong because Kraft Heinz's own proxy statements were false. The derivative plaintiffs were entitled to rely on the proxies; the falsity of the proxy statements was information solely in Kraft Heinz's possession.

A party cannot make a false public disclosure outside litigation that the other side relies on in its allegations in the complaint, repeat those false representations in court, obtain a final ruling based on those false representations, and then argue that those false representations were entirely outside the judicial process and that the defrauded party is to blame for relying on them. But even if we could agree with Kraft Heinz's argument that the representations remained outside the litigation, that argument reverts to the outdated distinction between intrinsic and extrinsic fraud, when Rule 60(b)(3) encompasses both. Properly understood, our inquiry must focus on whether Kraft Heinz's misrepresentations, within litigation or otherwise, prevented Erste from fairly presenting its case.

Erste contends that the false disclosures created a misimpression that Cahill's consulting relationship had concluded, which was integral to the Court of Chancery's conclusion that the plaintiffs in the Prior Action failed to plead particularized facts creating a reasonable doubt that Cahill lacked independence. According to Erste, on July 30, 2019 (the date for assessing demand futility), Cahill

30

had not been issued the 500,000 stock options. Therefore, Erste argues, "[a]nticipation of those options would weigh on a hypothetical decision by Cahill to sue 3G."[101] In addition, even after the options were granted, the 3G-affiliated Board members who comprised a majority of the Compensation Committee could decide that Cahill's consulting services no longer were needed and could terminate the stock option agreement before all Cahill's stock options vested. At the motion to dismiss stage—where "all well-pleaded factual allegations are accepted as true"[102]—Kraft Heinz's misrepresentations prevented Erste from adequately presenting the argument that Cahill was not independent from 3G on the basis of his ongoing consulting relationship with Kraft Heinz and its 3G-controlled management and Compensation Committee.

Accordingly, Count I was well-pleaded as to Rule 60(b)(3), and dismissal was not appropriate. The parties agreed at oral argument that if this Court reversed the Court of Chancery's Opinion as to Count I, the next logical step would be to remand the matter to the trial court for Rule 23.1 motion practice in the Prior Action in light of the new evidence.[103]

---

[101] Opening Br. at 24.

[102] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[103] Appellate Oral Argument at 18:00–19:20 (Erste) ("What makes sense under this circumstance . . . if we present[] facts on a pleading, you know, sufficient to state a claim, that it justifies re-opening the judgment . . . to warrant 60(b) relief it would be essentially to go back and re-do the 23.1 analysis . . . the Court has the ability actually to make the 23.1 determination as to Cahill right

## B. Erste's breach of fiduciary duty claim requires further proceedings consistent with our ruling regarding Erste's fraud claim.

The final point on appeal concerns the sufficiency of Erste's claim in Count II of the Complaint. Erste alleged in Count II that five Kraft Heinz directors "knew that the 2019 Proxy falsely and misleadingly described the changes to the compensation arrangements of Cahill and Zoghbi, and that subsequent proxy statements falsely described Cahill's ongoing consultant status."[104] Erste alleged that these directors breached their duty of loyalty by "never correcting the 2019 Proxy or the 2020 Proxy, which they knew [were] being used by the 3G Defendants to create a false record for the Court of Chancery and the Delaware Supreme Court to adjudicate the independence of Cahill [ ] in the Prior Action."[105] As to damages, Erste sought payment of litigation costs it incurred "to escape the effect of the wrongful dismissal of the Prior Action based on fraudulent public disclosures."[106] The Court of Chancery held that "Count II fail[ed] to state a claim on which relief

---

now for pleading purposes or it could be remanded back to the Vice Chancellor to just do a 23.1 analysis to leave open the Cahill question."); *id.* at 37:32–38:04 (Kraft Heinz) ("On this [appellant] and me may agree a little bit in the sense that I think we agree a remand would be appropriate I think we agree that a trial on a Rule 60 would make very little sense our view would be that there should then be a Rule 23.1 motion practice in the court below with whatever additional facts Erste would want to bring to bear.").

[104] Opinion at *11; *see* A344 (Complaint at ¶ 291).

[105] A344 (Complaint at ¶ 292).

[106] *Id.* (Complaint at ¶ 293).

can be granted."[107] It dismissed the claim "in its entirety with prejudice under Rule 12(b)(6)."[108]

The standards governing a motion to dismiss for failure to state a claim are well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[109]

The Court of Chancery held that the Complaint failed to allege any facts creating a reasonable inference that the director defendants "'knew' false statements were being used to 'create a false [litigation] record.'"[110] The court held that (i) Erste could not rely on a presumption of reliance, causation, and damages because it did not assert that "stockholders' economic or voting rights were impaired by disclosures"; and (ii) Erste failed to plead those elements, waiving any argument that its complaint satisfied these elements.[111]

In our view, the Court of Chancery's conclusions as to Count II may have been colored by its view that Rule 60(b)(3) relief is limited to extrinsic fraud.

---

[107] Opinion at *12.

[108] *Id.*

[109] *Savor, Inc.*, 812 A.2d 894, 896–97 (footnotes and internal quotation marks omitted).

[110] Opinion at *12; *see* A344 (Complaint at ¶ 292).

[111] Opinion at *11.

Additionally, Rule 23.1 motion practice may inform the analysis of whether Count II is well-pleaded or may obviate the need for the claim altogether. At a minimum, the motion practice is likely to clarify issues regarding causation and damages. Accordingly, we remand Count II for further proceedings consistent with our decision and based on the further development of the record regarding the underlying derivative litigation.

## IV. CONCLUSION

We **REVERSE** the judgment below and **REMAND** for further proceedings consistent with this decision.